**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

CHERYL S.,

                    Plaintiff,

v.                                        5:17-CV-523
                                        (CFH)

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| LEGAL AID SOCIETY OF MID-NEW YORK, INC.<br>221 South Warren Street, Suite 310<br>Syracuse, New York 13202<br>Attorneys for plaintiff | ELIZABETH V. KRUPAR, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>26 Federal Plaza - Room 3904<br>New York, New York 10278<br>Attorneys for defendant | OONA M. PETERSON, ESQ. |

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION & ORDER</u>

Presently pending before the Court, in this Social Security action filed by Cheryl

S. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or

"Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

(Dkt. Nos. 9 and 15.)  For the reasons set forth below, Plaintiff's motion for judgment on

the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born in 1961, making her 50 years old at the alleged onset date and 54 years old at the date of the ALJ's decision. Plaintiff reported obtaining an associate's degree. Plaintiff has past work as a dispatcher, receptionist, and records clerk. At the initial level, Plaintiff alleged disability due to major depressive disorder, parent-child relational problems, chronic back pain, and a rotator cuff tear.

## B. Procedural History

Plaintiff applied for a period of disability and disability insurance benefits and Supplemental Security Income on February 20, 2014 and February 26, 2014, alleging disability beginning on December 25, 2011. Plaintiff's applications were initially denied on April 22, 2014, and she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Paul Greenberg on September 3, 2015. On October 27, 2015, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 17-35.)[1] On March 15, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Id. at 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's electronic filing system.

## C.    The ALJ's Decision

First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through March 31, 2016.  (T. 22.)  Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 25, 2011, the alleged onset date.  (Id.)  Third, the ALJ determined Plaintiff's dysfunction of major joints including the knees and shoulder, degenerative disc disease ("DDD"), obesity, and affective disorder to be severe impairments.  (Id.)  Fourth, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. at 23-24.)  Specifically, the ALJ reviewed Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 12.04 (affective disorders) and considered the effects of Plaintiff's obesity pursuant to Social Security Ruling ("SSR") 02-1p.  (Id.)  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except that she

> occasionally can climb ramps and stairs; she occasionally can crouch.  She cannot climb ladders, ropes, or scaffolds.  She cannot crawl.  The claimant occasionally can reach overhead with her left upper extremity.  She must be able to stand for five minutes after sitting for twenty-five minutes, or sit for five minutes after standing for twenty-five minutes, but she can continue working in either position.  The claimant can perform work involving occasional in-person contact with the public.

(Id. at 25.)  Sixth, the ALJ found that Plaintiff is capable of performing past relevant work as a dispatcher and other work as a service dispatcher.  (Id. at 29.)  The ALJ concluded that Plaintiff is not disabled.

### D. Arguments

### 1. Plaintiff's Arguments

First, Plaintiff argues that the medical and vocational evidence support a finding of disability because a treating source opinion and vocational expert's ("VE") testimony provided that Plaintiff could not perform any job in the national economy. (Dkt. No. 9, at 13-19 [Pl.'s Mem. of Law].) In arguing that the RFC is not supported by substantial evidence, Plaintiff contends that the ALJ failed to properly consider the opinion evidence in several ways. (Id.) Specifically, Plaintiff argues that the ALJ erred in not giving deference or greater weight to the joint opinion from Plaintiff's primary care providers Roger Scott, D.O., and Margaret Downing, PA-C, which indicated that her impairments would adversely affect her ability to pay attention, concentrate, and focus on work activity over an eight-hour workday and that she would be off-task for 50-70 percent of a shift. (Id. at 14-16.) Plaintiff also argues that her mental status was not outside of the expertise of these primary care providers and that Lisa Loomis, LCSW treated her anxiety and depression. (Id. at 16.) Plaintiff additionally argues that the ALJ did not cite any contrary medical opinion when affording only some weight to the treating source opinions. (Id. at 16-17.) Plaintiff argues that evidence provided by Ms. Loomis -- who has treated her since May 2013 -- is consistent with Dr. Scott and PA Downing's assessment that she would be off task 50-75 percent of the time and would have difficulty working with others. (Id. at 17.) Plaintiff also argues that new and material evidence -- including new treatment notes from psychiatrist Tadeus Kowalski, M.D. -- submitted to the Appeals Council supports Dr. Scott and PA Downing's opinion of her mental limitations. (Id. at 17-18.)

Plaintiff also appears to argue that the ALJ erred in his consideration of the opinion of consultative examiner Dennis Noia, Ph.D., which indicated a guarded prognosis, a recommendation for continued treatment, and a determination that Plaintiff's psychiatric problems may, at times, interfere with her ability to function on a daily basis. (T. at 14, 16.) Specifically, Plaintiff argues that the ALJ misconstrued Dr. Noia's report by finding that it indicated only mild mental health problems with minimal limitations. (Id. at 16.) Rather, Plaintiff argues the portion of Dr. Noia's report indicating that Plaintiff's psychiatric problems may at times interfere with her ability to function on a daily basis is consistent with significant mental limitations. (Id.)

Plaintiff additionally argues that the ALJ substituted his own opinion for competent medical evidence. (T. at 19-21.) Specifically, Plaintiff contends that the ALJ discounted Plaintiff's mental limitations and erred in restricting her to work involving occasional contact with the public based on her presentation at the administrative hearing as "mentally sharp" with a military background. (Id. at 19.) Plaintiff argues that her behavior at the hearing (her representative gave her a rubber band to stretch and move during the hearing) and her difficulties discussing her panic attacks and mental health issues are contrary to the ALJ's observation that she was mentally sharp. (Id.) Plaintiff further argues that the ALJ's opinion of her as mentally sharp cannot be used as a substitute for medical evidence. (Id. at 20.) Plaintiff also argues that the reasons stated by the ALJ -- including that her mental health issues were based more upon her immediate situation than on a severe underlying mental health condition, that she began receiving mental health counseling only in 2013, that she had never been hospitalized for psychiatric treatment, that she successfully worked for many years, and that her

employment ended when her employer found that she had engaged in theft -- are not sufficient to discount competent psychiatric evidence. (Id. at 20-21.) Plaintiff additionally argues that the ALJ erred in using her long work history as a basis to afford great weight to Dr. Noia's opinion that Plaintiff has mild limitations. (Id. at 21). Further, plaintiff contends that the ALJ should not have relied on her extensive work history prior to seeking mental health treatment and the alleged onset date to evaluate Plaintiff's limitations. (Id.)

Second, Plaintiff argues that the ALJ erred in relying on VE testimony that was inconsistent with the record. (T. 21-26.) Specifically, Plaintiff argues that (1) the ALJ provided no evaluation of the Medical-Vocational Guidelines when determining whether Plaintiff was disabled, (2) the VE erred in answering that Plaintiff could perform her past work as a dispatcher or other work as a service dispatcher because such positions would require more than occasional contact with the public as limited by the RFC, (3) the VE's testimony was factually incorrect and contrary to the job descriptions provided in the Dictionary of Occupational Titles ("DOT") as well as those definitions in the vocational publication called the Occupational Information Network ("O*Net"), and (4) the ALJ erred in posing his hypothetical question to the VE because he defined occasional contact with the public as "in person contact, not telephone contact" but only stated in the RFC that Plaintiff was limited to "occasional contact with the public." (Id. at 22-26.) Plaintiff argues occasional contact with the public would include face-to-face, telephone, or other contact with the public and would eliminate her past relevant work as a dispatcher and other work as a service dispatcher. (Id. at 24.)

### 2.    Defendant's Arguments

First, Defendant argues that the ALJ's mental RFC is supported by substantial evidence.  (T. 7-10.)  Specifically, Defendant argues that the evidence the ALJ cited in determining Plaintiff's mental RFC (including Dr. Noia's opinion, state agency psychiatric consultant E. Kamin, Ph.D.'s opinion, Plaintiff's conservative course of treatment, her extensive work history which ended due to theft rather than a mental inability to work, her counseling notes showing her mental problems were based on her immediate situation rather than a severe underlying mental health condition, her activities of daily living, and her conduct during the administrative hearing) amply supports the ALJ's decision.  (Id. at 8-10.)

Second, Defendant argues that the ALJ properly evaluated PA Downing's opinion.  (T. 10-14.)  Specifically, Defendant argues that Dr. Scott, who co-signed PA Downing's opinion, does not to appear to have treated Plaintiff on a regular basis and that PA Downing's opinion should not be subject to the treating physician rule given that she is not an acceptable medical source and Dr. Scott's contribution to the opinion seems negligible.  (Id. at 10-11.)  Defendant also argues that, even if the opinion were from a treating physician, the ALJ properly evaluated it and reasonably assigned it limited weight based on the factors found in the Regulations, including the ALJ's indication that Plaintiff's mental health status fell beyond the expertise of Dr. Scott and PA Downing.  (Id. at 11-12.)  Defendant further argues that the ALJ considered significant evidence in his decision that contradicts PA Downing's opinion (including Dr. Noia's report) and that, even if the ALJ did not mention Dr. Noia's report or other contrary evidence directly in connection with PA Downing's opinion, that omission is not

a basis for remand because the ALJ's reasoning was clear and showed that he relied on persuasive evidence that contradicted PA Downing's opinion.  (Id. at 12-13.)

Third, Defendant argues that the Appeals Council was correct in finding that the new evidence submitted by Plaintiff did not provide a basis for changing the ALJ's decision.  (T. at 14.)  Defendant argues that Dr. Kowalski's treatment notes undercuts PA Downing's opinion because they show Dr. Kowalski found Plaintiff had grossly intact attention span and concentration, not a 50-75 percent impairment in this area.  (Id.)

Fourth, Defendant argues that the ALJ did not substitute his own opinion for competent medical evidence.  (T. 14-16.)  Specifically, Defendant argues that the RFC was based on the opinions of Drs. Noia and Kamin and that these opinions constitute substantial evidence.  (Id. at 14.)  Defendant also argues that the ALJ's consideration of factors such as Plaintiff's conservative treatment, work history, and behavior at the hearing was appropriate and supports his decision.  (Id. at 14-16.)

Fifth, Defendant argues that the vocational evidence supports the ALJ's finding that Plaintiff could perform past relevant work as actually and generally performed.  (T. 16-17.)  Specifically, Defendant argues that Plaintiff ignores the fact that the ALJ found that she could perform her past dispatcher job as she actually performed it, not as it is generally performed.  (Id. at 16.)  Defendant argues, therefore, that any potential conflict between the VE's testimony and the description of the job in O*Net or the DOT does not undermine the AJL's overall Step Four finding.  (Id.)  Defendant also argues that Plaintiff's reliance on the O*Net job description is misplaced because there is no requirement that the VE's testimony must rely on that database.  (Id.)  Defendant additionally argues that Plaintiff does not prove that she did her past dispatcher job in a

way that involved more than occasional in-person public contact.  (Id. at 16-17.)

Further, Defendant contends Plaintiff fails to demonstrate that there is conflict between

the VE's testimony and the DOT because there is no indication that the portion of the

DOT description Plaintiff cites (indicating that a dispatcher may confer with customers to

expedite or locate missing, rerouted, delayed or damaged merchandise) exceeds the

RFC limitation to occasional in-person contact with the public.  (Id. at 16-17.)  Finally,

Defendant argues that there is no meaningful difference between the RFC limitation to

work involving occasional in-person contact with the public and the hypothetical

question indicating only occasional contact with the public, meaning in-person but not

telephone contact.  (Id. at 17.)


## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health &

Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's

determination will be reversed only if the correct legal standards were not applied, or it

was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986

(2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied

correct legal principles, application of the substantial evidence standard to uphold a

finding of no disability creates an unacceptable risk that a claimant will be deprived of

the right to have her disability determination made according to the correct legal

principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983), Marcus v. Califano,

615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." <u>Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." <u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Disability Standard

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States has recognized the

validity of this sequential evaluation process.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42

(1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work.  Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.  Under the
> cases previously discussed, the claimant bears the burden of
> the proof as to the first four steps, while the [Commissioner]
> must prove the final one.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982); <u>accord</u> <u>McIntyre v. Colvin</u>, 758

F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further."  <u>Barnhart v. Thompson</u>, 540 U.S.

20, 24 (2003).


### III.    ANALYSIS

**A.    Whether Substantial Evidence Supports the ALJ's Analysis of Plaintiff's RFC, Credibility, and Opinion Evidence**

RFC is defined as "'what an individual can still do despite his or her limitations

. . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are considered to be qualified experts. See also Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, 14-CV-0063 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination

is supported by substantial evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984).

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" <u>Schlichting v. Astrue</u>, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting <u>Lewis v. Apfel</u>, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" <u>Schlichting</u>, 11 F. Supp. 3d at 206 (quoting <u>Carroll v. Sec'y of Health and Human Servs.</u>, 705 F.2d 638, 642 (2d Cir. 1983); <u>Aponte v. Sec'y, Dep't of Health and Human Servs.</u>, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. <u>Weather v. Astrue</u>, 32 F. Supp. 3d 363, 371 (N.D.N.Y. 2012) (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 776 (2d Cir. 1999)).

      **i.    The ALJ's Consideration of Plaintiff's RFC, Credibility, and Opinion Evidence**

Here, the ALJ found that Plaintiff can perform a modified range of sedentary work involving occasional in-person contact with the public. (T. 25.) In reaching this RFC, the ALJ considered Plaintiff's reports and hearing testimony, her treatment for various impairments (including total left knee replacement and physical therapy, left shoulder surgery and physical therapy, planned right knee surgery in September 2015, and mental health treatment), and the medical opinions from Dr. Ganesh, Dr. Scott, Dr. Noia, Dr. Kamin, and Ms. Loomis. (Id. at 25-28.)

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible and noted that, although her medical problems with her knees particularly were well-documented and she had received significant medical treatment for these conditions, the evidence did not fully support the degree of severity alleged. (T. 26.) The ALJ also noted that Plaintiff presented as mentally sharp at the hearing, had a military background, noted her history of knee impairments, and that, although she had one previous knee surgery and was scheduled for another, she was able to live in an apartment above a garage, presumably climbing stairs. (Id.) The ALJ concluded that Plaintiff's mental health issues are based more on her immediate situation than a severe underlying mental health condition. (Id.) The ALJ also noted that Plaintiff did not begin receiving mental health counseling until 2013, that she has never been hospitalized for psychiatric treatment, that she successfully worked for many years (suggesting her overall mental health functioning does not substantially limit her ability to work), and that her tenure as a government employee ended only when she was found to have engaged in theft, rather than as a result of her impairments. (Id.)

As noted above, when considering Plaintiff's RFC, the ALJ considered the opinion evidence. (T. 27-28.) In April 2014, consultative examiner Dr. Ganesh observed that Plaintiff appeared to be in no acute distress; had a normal gait and stance; and she could not walk on her heels or toes and could not squat, but needed no help changing or getting on and off the exam table and was able to rise from a chair without difficulty. (Id. at 312.) She had a limited range of motion in the lumbar spine with negative straight leg raise testing bilaterally, limited range of motion in the left shoulder, and full range of motion in the cervical spine, right shoulder, elbows, forearms, wrists, hips, knees, and ankles. (Id. at 313.) Her strength in the left upper extremity was 4/5 while the rest was full, and she had intact hand and finger dexterity and full grip strength bilaterally. (Id. at 313-14.) Dr. Ganesh diagnosed lower back pain, status post left shoulder surgery, history of left knee Osgood-Schlatter disease, and asthma. (Id. at 314.) Dr. Ganesh opined that Plaintiff had no gross limitations to sitting, standing, or walking, and a mild degree of limitation to lifting, carrying, pushing, pulling, and overhead activity. (Id.) The ALJ afforded great weight to Dr. Ganesh's opinion, noting that Dr. Ganesh examined Plaintiff and her assessment was consistent with the examination results and Plaintiff's ongoing medical treatment. (Id. at 27-28.)

In April 2014, consultative examiner Dr. Noia observed that Plaintiff's demeanor and responsiveness to questions were cooperative and her manner of relating, social skills, and overall presentation were adequate. (T. 317.) Her thought process was coherent and goal-directed and her affect was constricted and somewhat reduced in intensity compared to her thoughts and speech. (Id. at 318.) Her mood was depressed and she appeared sad and slightly tearful, but she had intact attention, concentration,

and recent and remote memory skills, as well as good insight and judgment. (Id.) Dr.

Noia diagnosed unspecified depressive disorder and unspecified anxiety disorder. (Id. at 319.)

Dr. Noia opined that Plaintiff had no limitations in understanding and following simple instructions and directions, performing simple or complex tasks, or maintaining attention and concentration for tasks. (T. at 319) She appeared to have no limitations regarding her ability to attend to a routine and maintain a schedule, learn new tasks, or make appropriate decisions. (Id.) She appeared to be able to relate to, and interact moderately well with, others and there appeared to be mild to moderate limitations regarding her ability to deal with stress. (Id.) Dr. Noia indicated that these difficulties were caused by psychiatric problems, that the results of the examination appeared to be consistent with psychiatric problems, and concluded that this may interfere with Plaintiff's ability to function on a daily basis at times. (Id.) The ALJ afforded great weight to Dr. Noia's opinion because the findings were consistent with the clinical interview and Plaintiff's work history. (Id. at 28.) The ALJ also afforded great weight to the April 2014 opinion of non-examining consultant Dr. Kamin, although it was largely derivative of Dr. Noia's psychiatric consultative examination. (Id.)

In August 2015, plaintiff's therapist Ms. Loomis indicated diagnoses of major depression (recurrent/moderate), generalized anxiety disorder, and panic disorder without agoraphobia. (T. 878.) Ms. Loomis opined that Plaintiff had a slight limitation in the ability to ask simple questions and request assistance; slight-to-moderate limitations in the ability to maintain socially appropriate behavior and not distract others in the workplace (dependent on the number of individuals) and the ability to complete tasks in

a timely manner (dependent on setting and the number of individuals); and moderate limitations for understanding, remembering and carrying out short, simple instructions, understanding, remembering and carrying out detailed instructions, interacting appropriately with supervisors, responding appropriately to changes in a routine work setting, and sustaining an ordinary work routine without requiring special or increased supervision.  (Id. at 878-79.)

Ms. Loomis also opined marked limitations in the ability to make judgments on simple work-related decisions, interact appropriately with the public and co-workers, maintain attention and concentration for extended periods, work at a fast pace, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.  (T. 878-79)  She opined an extreme limitation in the ability to respond appropriately to stress/work pressures in a usual work setting.  (Id. at 879.) The ALJ afforded Ms. Loomis' opinion limited weight, noting that, although she is not an acceptable medical source, she is a medical professional with a treating relationship. (Id. at 28.)  The ALJ also noted that Ms. Loomis' opinion was: provided through a checklist-based form, was heavily dependent on Plaintiff's self-reports, and overly restrictive in light of Plaintiff's limited history of mental health treatment and her prior successful work experience.  (Id. at 28.)

In September 2015, primary care providers PA Downing and Dr. Scott noted that Plaintiff had right knee surgery pending for September 8, 2015.  (T. 890.)  They jointly opined that Plaintiff was able to sit one to three hours per shift and could not perform work that required her to sit for six hours because she needed to be able to walk around

and stretch her back and legs.  (Id.)  They opined that Plaintiff could stand for one to two hours and could not perform work that required her to be on her feet (either standing or walking) for six hours because she could not stand still for more than an hour and needed to stretch her legs and back.  (Id. at 891.)  They determined that she was limited to lifting and carrying less than 20 pounds infrequently due to shoulder and back pain, and that pushing, pulling, and twisting was dependent on the weight/size of the equipment with a limitation on items greater than 20 pounds.  (Id.)  She was unable to perform climbing, crawling, bending, squatting, or kneeling due to issues with her low back, knee, and obesity; she could reach with her right arm only; and she was unable to reach with her left arm due to pain.  (Id.)  PA Downing and Dr. Scott also indicated that Plaintiff's mental impairments adversely affected her ability to pay attention, concentrate, and focus on work activity over an eight-hour work day, noting that, as an impatient, irritable individual, she would be difficult to work with and they estimated she would be off-task for 50-75 percent of a shift.  (Id.)  They also indicated Plaintiff had environmental limitations mostly due to anxiety and intolerance.  (Id.)

The ALJ afforded some weight to Dr. Scott and PA Downing's opinion because Dr. Scott is a treating source who, in conjunction with PA Downing, provided a helpful narrative explanation of the provided assessment.  (T. 28.)  The ALJ noted, however, that many of the opined limitations were attributed to Plaintiff's mental health status, which was beyond Dr. Scott and PA Downing's areas of expertise.  (Id.)  The ALJ also noted that their assessment of Plaintiff's physical limitations was generally consistent with a sedentary RFC, and, to the extent that their opinion differed from Dr. Ganesh's opinion, the ALJ found Dr. Ganesh's opinion more persuasive.  (Id.)

### ii. The Court's Analysis

The Court finds Plaintiff's arguments as to RFC, credibility, and opinion evidence unpersuasive. First, the ALJ's consideration of the opinion evidence indicates a careful, detailed analysis of the various opinions with sufficient explanation, including multiple reasons for the specific weight afforded to each opinion. (T. 27-28.) Further, the ALJ's reasons for the weight afforded do not indicate that he substituted his own judgment for the competent medical opinions. For example, the ALJ indicated that many of the limitations opined by Dr. Scott and PA Downing were attributed to Plaintiff's mental health status, which was beyond Dr. Scott and PA Downing's scope of expertise. (Id. at 28.) The Court's review of the record does indicate that these individuals were Plaintiff's primary care providers who treated her physical and mental impairments with medication. (Id. at 603-14.) Their combined opinion indicates that Plaintiff has multiple medical issues, including "unstable" anxiety and orthopedic problems in the low back, knee, and shoulder. (Id. at 890.) They reached a fair prognosis "with intensive therapy" and opined that Plaintiff would be off-task 50-70 percent of a shift in response to a question asking if Plaintiff's mental impairments adversely affect her ability to pay attention, concentrate, and focus on work activity over an eight-hour workday. (Id. at 890-91.) These aspects of their opinion support the ALJ's reasoning that the opined limitations were attributed to Plaintiff's mental health status rather than the physical impairments that constituted the majority of their treatment of Plaintiff.

Second, although Plaintiff argues that the ALJ did not cite any contrary medical opinion in affording only some weight to the treating source opinions, it is clear from the ALJ's decision that relied on a contrary medical opinion. Namely, the ALJ afforded

great weight to Dr. Noia's opinion, which he noted indicated only mild mental health problems with minimal limitations. (T. 28.) It is the ALJ's responsibility to weigh the evidence and resolve material conflicts; the ALJ reasonably relied on Dr. Noia's opinion indicating far less severe limitations than those opined by Dr. Scott and PA Downing based on the totality of the evidence. See Bliss v. Colvin, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); Petell v. Comm'r of Soc. Sec., 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."). It was within the ALJ's purview (and, in fact, it was his duty) to consider the various opinions of record regarding Plaintiff's mental limitations and the factors relating to those opinions, including consistency with the evidence and the fact that Dr. Scott and PA Downing do not appear to specialize in mental health treatment. See 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

Third, although Plaintiff argues that the ALJ misconstrued Dr. Noia's report as indicating only mild mental health problems with minimal limitations, the Court's review of this opinion and the ALJ's decision does not reveal that the ALJ misconstrued or otherwise mischaracterized Dr. Noia's opinion. Dr. Noia opined only mild-to-moderate limitations regarding Plaintiff's ability to deal with stress. (T. 319.) The remainder of his opinion neither supports the significant mental limitations alleged by Plaintiff nor is it consistent with the limitations opined by Dr. Scott and PA Downing or Ms. Loomis. (Id.)

Fourth, contrary to Plaintiff's arguments, the evidence from Ms. Loomis detailing her treatment of Plaintiff between May 2013 and July 2015 does not support the marked and extreme limitations she or Dr. Scott and PA Downing reached. (T. 662-81.) This evidence shows only general mental health treatment without significant noted abnormalities, as the ALJ noted in his decision. (Id. at 27.) The Court declines any invitation by Plaintiff to reweigh the evidence before the ALJ. See Warren v. Comm'r of Soc. Sec., 15-CV-1185, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), Report and Recommendation adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting Lefford v. McCall, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll, 705 F.2d at 642).

Finally, it was within the ALJ's purview to consider both Plaintiff's demeanor at the administrative hearing and her previous work history when determining her credibility. The ALJ summarized Plaintiff's allegations, testimony, and medical treatment as well as the opinion evidence and considered all of this evidence according to the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p (superseded by SSR 16-3p). (T. 25-28.) As detailed above in Section III.A.i. of this Memorandum-Decision and Order, the ALJ indicated several bases for his credibility

determination, indicating that while Plaintiff's impairments could be expected to cause her alleged symptoms, the degree of severity she alleged was not fully supported by the evidence.  (Id. at 26-27.)  Further, although Plaintiff argues that the ALJ substituted his own opinion for competent medical evidence in discounting Plaintiff's mental limitations, the Court's review of the ALJ's overall decision does not support this alleged error. While Plaintiff argues that the ALJ substituted his own judgment regarding her work history in order to afford great weight to Dr. Noia's opinion, it is clear that the ALJ afforded great weight to Dr. Noia's opinion because the findings were consistent with the clinical interview and Plaintiff's work history.  (Id. at 28.)  This is not a substitution of the ALJ's own judgment requiring remand given that the medical evidence supports that finding.

For the reasons above, the Court finds that the RFC and credibility determinations as well as the ALJ's consideration of the opinion evidence are supported by substantial evidence; thus, remand is not required on this basis.

### B.    Whether the Appeals Council Properly Assessed Post-Decision Evidence

"Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Lesterhuis v. Colvin, 805 F.3d 83, 86 (2d Cir. 2015) (quoting 20 C.F.R. § 404.970(b)).  "The Appeals Council is obligated to consider 'new and material evidence.'" Stratton v. Colvin, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (citing 20 C.F.R. § 404.970(b)).  "New evidence is 'material' if it is: '(1) relevant to the claimant's

condition during the time period for which benefits were denied and (2) probative.'" Stratton, 51 F. Supp. 3d at 218 (quoting Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004)).  "'The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'"  Id. (quoting Pollard, 377 F.3d at 193) (alteration in original).

Although Plaintiff argues that the evidence at Exhibit 37F, which was submitted to the Appeals Council, is new and material and supports the opinion from Dr. Scott and PA Downing, the Court finds that this evidence does not meet the threshold requirement of materiality in that it does not present a reasonable possibility that it would have influenced the ALJ to decide Plaintiff's application differently.  Indeed, the latest treatment note included in Exhibit 37F, from October 2015, indicates that Plaintiff was doing better with medication changes.  (T. 899-903.)  For these reasons, the Appeals Council did not err when considering the post-decision evidence submitted by Plaintiff. Remand is, therefore, not required on this basis.

### C.    Whether the ALJ's Step Four and Step Five Determinations are Supported by Substantial Evidence

"[T]he Commissioner asks, at Step Four, 'whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform . . . her past work.'" Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (quoting Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000)) (internal citations omitted).  "[T]he claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981); SSR 82-62).

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" McIntyre, 758 F.3d at 150 (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." McIntyre, 758 F.3d at 151 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)). If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Pardee, 631 F. Supp. 2d at 211 (citing Melligan v. Chater, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

Here, the ALJ found that Plaintiff is capable of performing past relevant work as a dispatcher and other work as a service dispatcher. (T. 29.) Plaintiff argues that the ALJ erred in relying on VE testimony because it was inconsistent with the record. (Dkt. No. 9, at 21-26 [Pl.'s Mem. of Law].) Notably, Plaintiff argues that the VE erred in concluding that Plaintiff could perform her past work as a dispatcher or other work as a service dispatcher because such positions require more than occasional contact with the public, and that the VE's testimony was contrary to the job descriptions provided in the DOT and O*Net. (Id.) Plaintiff also argues that the ALJ erred in his hypothetical question to the VE because he defined occasional contact with the public as "in person

contact, not telephone contact" but only stated in the RFC that Plaintiff was limited to "occasional contact with the public." (Id. at 22-26.) Plaintiff argues that occasional contact with the public would include face-to-face, telephone, or other contact with the public and would eliminate her past relevant work as a dispatcher and other work as a service dispatcher. (Id. at 24.)

The Court finds these arguments to be without force because, as Defendant points out, Plaintiff has not established that conferring with customers as a dispatcher exceeds the RFC limitation to occasional in-person contact with the public. (Dkt. No. 15, at 17 [Def.'s Mem. of Law].) The distinction Plaintiff draws between the ALJ's definition of occasional contact with the public to the VE as "in person contact, not telephone contact" and the RFC's limitation to occasional contact with the public is similarly unpersuasive. (T. 25, 74.) The ALJ defined contact as in person contact at the administrative hearing, to which the VE testified that Plaintiff's dispatcher job would remain and that the service dispatcher position would also be available. (Id. at 74-75.) The ALJ reasonably relied on this testimony and restricted Plaintiff to occasional *in-person* contact with the public in the RFC. (Id. at 25.) Notably, Plaintiff's representative did not further question the VE regarding limitations of telephone contact following the ALJ's definition to the VE of contact meaning in person contact only. (Id. at 75-77.) The Court finds that any error by the ALJ to explicitly indicate within the RFC that "occasional in-person contact with the public" does not include telephone contact is harmless error because the ALJ's questions to the VE sufficiently show that the hypothetical did not include a limitation for contact over the telephone.

As indicated above in Section III.A. of this Memorandum-Decision and Order, the ALJ's consideration of Plaintiff's RFC, credibility, and the opinion evidence is supported by substantial evidence. The Court also finds that the ALJ's findings at Steps Four and Five, which are based in part on those other findings, are supported by substantial evidence. Thus, remand is not required.

## IV. CONCLUSION

**WHEREFORE**, for the reasons set forth herein, it is

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: September 4, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge